FILED
JEANNE A. NAUGHTON, CLERK
**FEB. 19 , 2021**
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: *Ronnie Plasner*
JUDICIAL ASSISTANT

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: | Case No.: 19-22088 (JKS) |
| **JENNIFER HARRISON,** | Judge: Hon. John K. Sherwood |
| Debtor. | Chapter: 7 |

**DECISION AND ORDER RE: DEBTOR'S MOTION TO REOPEN THE CASE
AND HOLD CREDITOR IN CONTEMPT (ECF No. 23)**

The relief set forth on the following pages, numbered two (2) through nine (9), is hereby

**ORDERED**.

_____
HONORABLE JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE

Dated: February 19, 2021

Case 19-22088-JKS    Doc 33    Filed 02/19/21    Entered 02/22/21 10:44:46    Desc Main
Document    Page 2 of 9

Page 2
Debtor:      Jennifer Harrison
Case No.:   19-22088 (JKS)
Caption:    **Decision and Order Re: Debtor's Motion to Reopen the Case and Hold Creditor in Contempt (ECF No. 23)**

## Facts and Procedural History

This matter is before the Court upon the motion of Jennifer Harrison (the "Debtor") to reopen her bankruptcy case and to hold her former landlord, Nicole Cemelli ("Ms. Cemelli"), in contempt of court for violating her discharge by trying to collect amounts due under an apartment lease. (ECF No. 23).

The Debtor and her roommate, Christopher Bouzy ("Mr. Bouzy"), signed a one-year lease with Ms. Cemelli for an apartment in Lodi, New Jersey on April 15, 2019 with monthly rent of $2,700. (ECF No. 30-1, p. 3). The Debtor only paid half of the rent for May and June 2019 and Ms. Cemelli commenced eviction proceedings scheduled to begin on June 19, 2019. (ECF No. 23-1, p. 11). The Debtor filed her Chapter 7 petition in the Bankruptcy Court on June 18, 2019, which stayed the eviction. Ms. Cemelli was listed by the Debtor as a creditor with a disputed claim for unpaid rent under the lease. (ECF No. 10, p. 15). Ms. Cemelli promptly filed a motion for relief from the automatic stay to continue the eviction proceedings, which was unopposed and was granted on July 25, 2019. (ECF Nos. 8, 13). Thereafter, Ms. Cemelli was free to resume her eviction efforts in the State Court.

The eviction continued, but only for a short while because Mr. Bouzy, the Debtor's co-tenant at the apartment, filed his own Chapter 7 proceeding on August 16, 2019. (Case No. 19-25881). This second bankruptcy delayed the eviction proceedings again until stay relief was granted in Mr. Bouzy's bankruptcy case on October 1, 2019 by Judge Vincent F. Papalia. (Case No. 19-25881, ECF No. 25). Judge Papalia's stay relief order provided "in rem relief" to Ms. Cemelli so that any more bankruptcies by either the Debtor or Mr. Bouzy would not further delay the eviction. The Debtor and Mr. Bouzy were finally evicted on or about November 17, 2019. (ECF No. 23-1, pp. 15-16).

Debtor:    Jennifer Harrison
Case No.:  19-22088 (JKS)
Caption:   **Decision and Order Re: Debtor's Motion to Reopen the Case and Hold Creditor in Contempt (ECF No. 23)**

---

Mr. Bouzy's bankruptcy case was dismissed without a discharge on January 28, 2020 because he did not appear for his meeting of creditors. (Case No. 19-25881, ECF No. 34). On September 27, 2019, an Order of Discharge was granted for the Debtor pursuant to 11 U.S.C. § 727. (ECF No. 20). On November 4, 2019, the Debtor's Chapter 7 bankruptcy proceeding was closed. (ECF No. 22).

As a result of the sequential bankruptcies of the Debtor and Mr. Bouzy, Ms. Cemelli incurred approximately $2,000 in legal fees in the Bankruptcy Courts and the Debtor was allowed to live in the apartment rent free for five (5) months after she filed her bankruptcy case – an additional financial loss of $13,500 (which does not include pre–petition rent). Since Mr. Bouzy's bankruptcy was dismissed without a discharge, Ms. Cemelli can seek to recover all these losses against him in State Court. As to recovery against the Debtor, the record reflects that Ms. Cemelli received legal advice from her bankruptcy attorney – generally, that she could pursue the Debtor for reasonable use and occupancy costs after the date of the filing of the bankruptcy petition but not attorney's fees or other charges due under the lease. (ECF No. 24, ¶ 5).

Ms. Cemelli wrote a letter to the Debtor and Mr. Bouzy on December 14, 2019 demanding unpaid rent and other amounts due under the lease. (ECF No. 23-2). To the extent this letter demanded more than the post-petition use and occupancy costs for the apartment from the Debtor (which it did), it was against the advice of her bankruptcy counsel and, as set forth below, violated the Debtor's discharge. On November 5, 2020, Ms. Cemelli filed a civil suit against the Debtor and Mr. Bouzy in the Superior Court of New Jersey in Hudson County seeking $15,000 in damages plus court costs. (ECF No. 23-1). The evidence in the record suggests that Ms. Cemelli is seeking more than use and occupancy from the Debtor in this lawsuit. However, Ms. Cemelli states that she is only seeking post-petition rent in the State Court lawsuit. (ECF No. 32). On December 15, 2020, the Debtor and Mr. Bouzy filed a responsive pleading in the State Court which includes a

Page 4
Debtor:     Jennifer Harrison
Case No.:   19-22088 (JKS)
Caption:    **Decision and Order Re: Debtor's Motion to Reopen the Case and Hold Creditor in Contempt (ECF No. 23)**

five-count Counterclaim. (ECF No. 23-3, p. 4). The Count that is relevant to the motion before this Court is Count V, which is a claim for damages against Ms. Cemelli for violating the Debtor's bankruptcy discharge.

On December 24, 2020, the Debtor moved to reopen her bankruptcy case and for sanctions and damages against Ms. Cemelli for violating her discharge. (ECF No. 23). Essentially, this is the same relief that the Debtor seeks in Count V of the State Court Counterclaim. The Court must decide whether and to what extent Ms. Cemelli's efforts to collect amounts due for use and occupancy of the apartment violated the Debtor's discharge and, if there was a violation, the appropriate remedy.

## Discussion

1. *At Least Some of Ms. Cemelli's Post-Petition Collection Efforts Violated the Debtor's Discharge.*

A good place to start is with the advice of Ms. Cemelli's counsel – (1) that she could not pursue amounts due under the terms of the lease (such as late fees and attorney's fees) because the lease was "wiped out" by the bankruptcy, and (2) that she could go after the reasonable value of the use and occupancy of the apartment after the petition date because bankruptcy only discharges pre-petition debts. (ECF No. 24, ¶ 5). As to (1), the Court agrees with counsel except it does not agree with the term "wiped out"– technically, the rejection of a lease in bankruptcy results in a breach of the lease by the debtor giving rise to a pre-petition claim.[1] As to (2), though the advice has logical appeal and some legal support, the law is unsettled.

The Bankruptcy Code provides some guidance. Under § 365(d)(1), if a trustee in a Chapter 7 case does not assume or reject an unexpired lease of residential real property within sixty (60) days of the petition date, the lease is deemed rejected. This section applies here, and the Debtor's

---

[1] But the Court is not criticizing counsel for trying to communicate with his client in plain English.

Case 19-22088-JKS    Doc 33    Filed 02/19/21    Entered 02/22/21 10:44:46    Desc Main
Document    Page 5 of 9

Page 5
Debtor:     Jennifer Harrison
Case No.:   19-22088 (JKS)
Caption:    **Decision and Order Re: Debtor's Motion to Reopen the Case and Hold Creditor in Contempt (ECF No. 23)**

lease was deemed rejected upon the 60th day. But, § 365(d)(1) does not say what happens to the rent while the trustee is deciding to assume or reject. With <u>nonresidential</u> real estate leases, § 365(d)(3) provides that the trustee must timely perform post-petition obligations under the lease (including rent) while assumption or rejection is being contemplated. It does not appear that residential landlords, like Ms. Cemelli, have been given this protection in the Bankruptcy Code. Ms. Cemelli relies, in part, on § 365(d)(3) to support her claim for post-petition rent. It is fair to suggest that if a nonresidential landlord's post-petition rent claim is protected under the Bankruptcy Code, residential landlords should get the same treatment. But this does not seem to be the case in individual Chapter 7 cases like this one. Finally, § 365(g)(1) provides that the rejection of a lease constitutes a breach of the lease which gives rise to a pre-petition claim. The Debtor relies on this section to support her argument that all the rent due under her apartment lease, whether pre- or post-petition, was subject to her discharge.

The Bankruptcy Code provisions above do not specifically address what happens when a debtor files Chapter 7 and remains at the property for an extended period after the lease is rejected. For her argument that the post-petition rent is treated as a pre-petition claim and discharged, the Debtor relies on *In re Miller* and *In re Maupin*.[2] In *Miller*, the debtor's month-to-month lease of a mobile home lot was at issue, and the debtor had vacated the premises and surrendered the mobile home to the mortgage holder by the time she filed her bankruptcy petition.[3] After the debtor received her discharge, the landlord sent a letter requesting unpaid rent on the lot and subsequently obtained a State Court judgment.[4] The judgment was for unpaid rent and expenses under the lease from the date on which debtor filed her bankruptcy petition until the mobile home mortgage lender

---

[2] *In re Miller*, 247 B.R. 224 (Bankr. E.D. Mich. 2000), aff'd, 282 F.3d 874 (6th Cir. 2002). *In re Maupin*, 165 B.R. 864 (Bankr. M.D. Tenn. 1994).
[3] *In re Miller,* 247 B.R. at 225.
[4] *Id.*

Case 19-22088-JKS    Doc 33    Filed 02/19/21    Entered 02/22/21 10:44:46    Desc Main
Document      Page 6 of 9

Page 6
Debtor:     Jennifer Harrison
Case No.:   19-22088 (JKS)
Caption:    **Decision and Order Re: Debtor's Motion to Reopen the Case and Hold Creditor in Contempt (ECF No. 23)**

foreclosed upon the mobile home.[5] The Bankruptcy Court held that the landlord had violated the post-discharge injunction because the debtor's debt under the lease constituted a pre-petition debt which was discharged.[6] The decisions by the Bankruptcy Court and Courts of Appeal in *Miller* are helpful and there is no doubt that under § 365(g)(1), the rejection of a lease results in a breach and any claim arising from the breach is deemed to have arisen pre-petition. But, the Courts in *Miller* were dealing with a debtor who was off the premises when bankruptcy was filed and relied, at least to some extent, on this state of affairs in striking down the landlord's claim for post-petition rent. In this case, the Debtor benefitted from use and occupancy of the apartment for five (5) months after her petition was filed.

*In re Maupin* sheds more light on this question. In that case, the debtor filed for Chapter 7 relief and rejected a car lease but drove the car for six months post-petition.[7] After the Bankruptcy Court granted the debtor's discharge, the lessor attempted to collect from the debtor for her post-petition use of the vehicle by filing a State Court action.[8] The Bankruptcy Court held that the rejection constituted a breach of the lease agreement and, even though the debtor kept and used the vehicle for months, the lessor's claim for damages from the rejection and breach was an allowed pre-petition claim which was discharged pursuant to § 727.[9] The *Maupin* decision provides strong support for the Debtor's argument here that the rents due under the apartment lease for the post-petition period are treated as pre-petition claims that have been discharged.

Ms. Cemelli relies on *In re Werbinski*, a decision by the same bankruptcy judge that decided *Miller* (Judge Rhodes), a little over one year later.[10] In *Werbinski,* Judge Rhodes

---

[5] *Id.*
[6] *Id.*
[7] *Maupin*, 165 B.R. at 865.
[8] *Id.*
[9] *Id.* at 865-67.
[10] *In re Werbinski*, 271 B.R. 514 (Bankr. E.D. Mich. 2001).

Case 19-22088-JKS    Doc 33    Filed 02/19/21    Entered 02/22/21 10:44:46    Desc Main
Document      Page 7 of 9

Page 7
Debtor:     Jennifer Harrison
Case No.:   19-22088 (JKS)
Caption:    **Decision and Order Re: Debtor's Motion to Reopen the Case and Hold Creditor in Contempt (ECF No. 23)**

distinguished his prior decision in *Miller* because the debtor in *Miller* had moved off of the property and abandoned the premises.[11] In *Werbinski,* he held that because the debtors remained on the premises after the lease was rejected, the creditor was free to collect rent from them from the date of rejection (which is sixty (60) days after the petition date under § 365(d)(1)) forward.[12] Thus, in *Werbinski*, the Court suggests that once the lease is deemed rejected, the landlord can pursue post-rejection rents from a debtor that remains at the property. Applying that principle to the motion before the Court, Ms. Cemelli would have the right to collect rents from the Debtor from the 60th day following her petition date of June 18, 2019. Though the result in *Werbinski* has been criticized as being inconsistent with the Circuit Court's decision in *Miller*,[13] again, the Circuit Court in *Miller* was dealing with a debtor that vacated the premises before the bankruptcy and considered that in its decision.[14]

The approach in *Werbinski* is suitable for this unique case because it provides some limitation on the amount of time that can pass before a diligent landlord can start to seek rent from a holdover tenant. If this case had gone a normal route, Ms. Cemelli would have had the apartment vacated approximately sixty (60) days after the Debtor filed her petition. She obtained relief from the stay a little more than a month after the case was filed and was free to recommence the eviction proceedings. It was the following bankruptcy of Mr. Bouzy (which was dismissed) that made the situation more costly than it otherwise would have been. Thus, the Court believes that Ms. Cemelli's claim against the Debtor should be limited to reasonable use and occupancy for the period commencing sixty (60) days after her petition was filed through the date of eviction. Any

---

[11] *Id.* at 517.
[12] *Id.*
[13] *In re Humbert*, 567 B.R. 512, 516 (Bankr. N.D. Ohio 2017).
[14] *In re Miller*, 282 F. 3d at 878.

Case 19-22088-JKS    Doc 33    Filed 02/19/21    Entered 02/22/21 10:44:46    Desc Main
Document    Page 8 of 9
Page 8
Debtor:    Jennifer Harrison
Case No.:    19-22088 (JKS)
Caption:    **Decision and Order Re: Debtor's Motion to Reopen the Case and Hold Creditor in Contempt (ECF No. 23)**

claims made by Ms. Cemelli before that period were in violation of the Debtor's discharge. This decision is based on the unique circumstances of this case and equity.

2. *Sanctions*

Pursuant to 11 U.S.C. § 524(a)(2), the Chapter 7 discharge operates as a broad injunction against any acts by creditors seeking to collect a discharged debt. A creditor may violate the discharge injunction through collection activities such as sending a debtor letters seeking payment or making phone calls requesting payment from the debtor. When there are allegations that a creditor has violated the discharge injunction, courts often analyze the statements made by the creditor to the debtor considering the particular facts of the case.[15]

Although § 524 does not provide a debtor with an express right of action, "[b]ankruptcy courts have regularly exercised their contempt power under 11 U.S.C. § 105 in order to remedy violations of the discharge injunction."[16] "A court may impose civil contempt sanctions where there is clear and convincing evidence that (1) a valid order of the court existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order."[17]

In this case, there is a valid order of the court discharging the Debtor. (ECF No. 20). The certificate of service included with the order discharging the Debtor indicates that Ms. Cemelli was served with the order. (ECF No. 21). Thus, Ms. Cemelli knew about the Debtor's discharge and proceeded against her anyway. The fact that she may have believed in good faith that she was not violating the Debtor's discharge is not a defense to contempt.[18] However, it is reasonable to consider the unique circumstances of this case including the fact that, as the account now stands, the Debtor lived in the apartment rent free for five (5) months and the value of that occupancy is

---

[15] *See, e.g., In re Brown*, 481 B.R. 351, 360-61 (Bankr. W.D. Pa. 2012).
[16] *In re Meyers*, 344 B.R. 61, 64-65 (Bankr. E.D. Pa. 2006) (citations omitted).
[17] *Id*. at 65 (citations omitted).
[18] *See, In re Humbert,* 567 B.R. at 519.

Case 19-22088-JKS    Doc 33    Filed 02/19/21    Entered 02/22/21 10:44:46    Desc Main
Document    Page 9 of 9

Page 9
Debtor: Jennifer Harrison
Case No.: 19-22088 (JKS)
Caption: **Decision and Order Re: Debtor's Motion to Reopen the Case and Hold Creditor in Contempt (ECF No. 23)**

$13,500. The Court does not believe that the Debtor's damages caused by the violation of her discharge exceed the amount of financial loss already incurred by Ms. Cemelli. To the extent that Ms. Cemelli is made whole in the pending State Court lawsuit, the Court may consider a request for attorney's fees at that time. Also, the Court would award coercive sanctions if Ms. Cemelli continues to attempt collection of any discharged debt.

## **Conclusion**

For the foregoing reasons, the Debtor's motion to reopen the case is denied. Due to the unique circumstances of this case, the Debtor's motion for sanctions is denied without prejudice because the Debtor occupied the apartment rent free for five (5) months and the value of that occupancy outweighs any sanction that the Court would award against Ms. Cemelli.